IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher Ramsey, #254188, | ) | C/A No.: 1:10-1538-HFF-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Michael McCall, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Christopher Ramsey ("Petitioner" or "Ramsey") filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Respondent's return and motion for summary judgment. [Entry #18, #19]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #20]. Petitioner filed a response in opposition to Respondent's motion [Entry #31], as well as a motion to stay/for DNA testing. [Entry #30]. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment should be granted, and the motion to stay/for DNA testing should be denied.

I.    Factual Background

William Mobley ("Mr. Mobley" or "victim") was the night cashier of the Flamingo

video games parlor in Kershaw County. App. at 99, 397.[1] On March 21, 1997, the victim's body was discovered in the road by the newspaper deliveryman at approximately 6:00 a.m. App. at 79 80. The Kershaw County Sheriff's Department arrived a short time later to discover the victim's throat had been cut, with a large amount of blood in the road. App. at 83, 95, 115.

Police investigators took casts of footprints and tire impressions that they found at the scene of Mr. Mobley's body ("body scene"). App. at 123. The Sheriff's Department also went to the Flamingo, found the door open, and discovered approximately seven to eight thousand dollars missing. The register tape indicated the till had last been opened at 4:31 a.m. App. at 105, 228 29, 400, 639. On the edge of the road several miles from the victim's body, Investigator Jerry Brown discovered a striped sweater that appeared to have bloodstains on it. App. at 205 10. Testing indicated the victim's hair and blood were on the sweater. App. at 527, 737.

Police officers received tips advising them to investigate Petitioner because "he had been down to Mr. G's and the Beaver Creek area the night before and he was acting really strange and acting like he was wired up." App. at 321, 330. At approximately 10:30 a.m., sheriff's deputies and investigators went to Petitioner's trailer and observed that he appeared to have just gotten out of the shower. App. at 130 31, 133 34. They observed soap and

---

[1] Citations to "App." refer to the Appendix for Writ of Certiorari as to Petitioner's claim for collateral relief in the state courts of South Carolina. That appendix is available at Entry #18-6 through #18-15 in this habeas matter.

clothing in the washing machine. App. at 239 40, 274.

After obtaining consent to search the premises, police observed near the entrance to the trailer, a pair of boots with "what appeared . . . to be blood on the top of the boot . . .." App. at 134 35, 239 40, 271. Captain David Thomley removed the boots from the trailer and placed them on the hood of Lieutenant Marvin Brown's car. App. at 138, 272 74, 343. Lieutenant Brown put them in a paper bag as evidence. App. at 241.

Investigator Kirk Corley removed footprint casts he had made at the body scene from the trunk of Lieutenant Brown's car, moved about 25 feet away from the car, and washed the blood and dirt off the cast, preparing to compare the boots to the cast. App. at 140. Lieutenant Brown sent the casts, the boots, the hair, and the sweater to SLED for analysis. App. at 242, 278. Investigators also noted that a blue station wagon parked at Petitioner's trailer had been washed, that there was water on the floor mats inside the car and that there was a hose beside the car. App. at 276, 344 45. The investigators photographed the car's tires. App. at 346. Later that evening, investigators returned to the body scene and took casts of tire impressions that Sheriff Steve McCaskill located there. App. at 348 49. The tire tracks appeared to have been made from the body scene toward the location of the sweater. App. at 645 46. Kershaw County Sheriffs Office Criminal Investigator Eric Tisdale testified that the impressions and the tires on the blue station wagon appeared to be similar. App. at 355.

Several witnesses testified that they had seen Petitioner driving the blue station wagon and wearing the striped sweater on the night before the murder. App. at 535 (Crolley testifying he saw Petitioner driving the station wagon in front of Mr. G's store and wearing

3

a sweater that looked like the one discovered by Investigator Brown); App. at 536 38, 553,

562 63 (Truman and Melissa Payne testifying they saw Petitioner wearing a striped sweater

similar to the blood-soaked sweater on March 20, 1997).

Investigators also learned that the victim knew Petitioner, and probably would have

let him into the Flamingo at night, as the victim would only open the locked doors of the

video parlor for customers he knew. App. at 405. Investigator Corley showed photographs

of the sweater to other police officers, and he was informed that officers had seen someone

wearing that sweater previously at the Kershaw County Courthouse. Investigator Corley

prepared a photographic lineup that included a picture of Petitioner. App. at 166. On April

1, 1997, Investigator Corley separately showed the lineup to Deputies Patrick Boone and

David Dowey, both of whom identified Petitioner as the person who had been wearing the

sweater several days prior at the courthouse. App. at 166 68.

On April 14, 1997, investigators returned to Petitioner's trailer with a search warrant

to photograph the tires on his car. App. at 171 72. The photographs were turned over to

SLED for comparison to the tire impression casts obtained at the body scene on March 21st.

App. at 173. SLED Agent Robin Taylor, a serologist, tested the blood on the boot and the

sweater. App. at 420, 425 26. She determined the blood on the boot that police had removed

from Petitioner's trailer was human blood, as was the blood on the sweater that Investigator

Brown found on the road. App. at 424, 427. Agent Taylor forwarded the samples from the

boot and sweater to SLED Agent David McClure for DNA testing. App. at 428.

Agent McClure performed a restricted fragment length polymorphic (RFLP) DNA

analysis on the boot and the sweater. He determined that the DNA extracted from the blood on the sweater matched the DNA profile of the victim. App. at 527. There was insufficient blood on the boots from which to obtain a DNA profile using the RFLP test, so Agent Taylor forwarded the sample to Michael Deguglielmo at Microdiagnostics in Nashville, Tennessee for further testing, along with a known sample of victim's DNA. App. at 437, 465, 526. Mr. Deguglielmo performed a polymerase chain reaction (PCR) analysis on the blood sample taken from Petitioner's boot and concluded it contained a mixture of DNA from two people. App. at 465  66, 476  77. Because the amount of blood tested was so small, Mr. Deguglielmo could obtain readings for only six of the ten genetic DNA markers. App. at 478. He concluded that he could not exclude victim as one of the persons whose blood was on the boot. App. at 477. Based on his testing, Mr. Deguglielmo determined that the chances that the DNA on the boot did not come from the victim were one in 4,601. App. at 478  79.

Petitioner was arrested on April 29, 1997, and was read his Miranda rights, which he waived. App. at 300  04, 356  58. During his transport to the Sheriff's Department, Ramsey stated, "I guess you guys are going to be arresting Joey [Conners], because he was with me that night." App. at 307; *see also* App. at 363.

II.    Procedural Background

In June 1997, Petitioner was indicted in Kershaw County for Murder (97-GS-28-4535), Kidnapping (97-GS-28-4536), and Armed Robbery (97-GS-28-4533). On November 10  13, 1998, Petitioner had a jury trial before the Honorable Edward B. Cottingham, in which he was represented by John W. Wells, Esquire. App. at 1  933 (trial

5

tr.). Petitioner was convicted of murder and kidnapping, and Judge Cottingham sentenced him to life without parole for murder. App. at 932.

Petitioner filed a notice of appeal with the South Carolina Supreme Court, and was represented by Robert M. Dudek of the South Carolina Office of Appellate Defense. App. at 934. On July 23, 2001, the court affirmed Applicant's conviction and sentence. *State v. Ramsey*, Op. No. 25325, 550 S.E.2d 294 (S.C. 2001).[2] Petitioner's motion for rehearing was denied, and the remittitur was issued on August 22, 2001. App. at 1000  16.

Petitioner filed an application for Post-Conviction Relief ("PCR") on March 5, 2002, as amended June 9, 2006, July 31, 2006, and August 8, 2006. App. at 1018  27, 1032  38. An evidentiary hearing was held on Petitioner's PCR before the Honorable Alison R. Lee on August 11, 2006, at which Petitioner testified and was represented by Tara D. Shurling, Esquire. App. at 1039  96 (hr'g tr.). By order dated October 10, 2007, Judge Lee denied the PCR. App. at 1097  1107.  Petitioner filed a motion to alter or amend that denial, which Judge Lee denied on December 18, 2007. App. at 1108  10, 1115.

Petitioner appealed the denial of his PCR application, and on July 17, 2008, Petitioner filed a petition for writ of certiorari. Ms. Shurling continued to represent him on his PCR appeal. [Entry #18-1]. On March 3, 2010, the South Carolina Court of Appeals issued an order denying the petition for certiorari, and the remittitur issued on March 19, 2010. [Entry #18-4, 18-5]. This habeas petition followed.

_____

[2] A copy of the South Carolina Supreme Court's decision on Petitioner's direct appeal is available at pages 996  1000 of the appendix. [Entry #18-14].

III.    Discussion

    A.    Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus:

Ground One:

    Whether the trial judge erred by refusing to grant the defense an in camera identification hearing regarding how witnesses were called upon to identify him from a photograph of a sweater, and a photo array, since appellant denied he was at the courthouse where two police officers allegedly saw him wearing the sweater, and appellant had a right to an in camera hearing, and a determination from the trial judge before the identification evidence went to the jury?

    Supporting Facts: Appellant had the right to an in camera identification hearing to challenge the taint of his identification pertaining to the sweater. This sweater was the most critical piece of evidence allegedly connecting appellant to the crime, and appellant denied he had ever seen the sweater, and that he was at the courthouse where the police officers said they saw him wearing the sweater on a prior occasion. The judge should have heard the identification testimony in camera, and made a determination before allowing the jury to hear this identification evidence.

Ground Two:

    Whether the judge erred by refusing to suppress the DNA evidence based upon its unreliability due to contamination, where bloody evidence was taken from one crime scene to another and then to appellant's home, because the state failed to adhere to accepted procedures for handling blood evidence, appellant presented expert testimony this case involved "classic" mishandling of blood evidence, since suppression or striking the DNA evidence was warranted under these circumstances?

    Supporting Facts: The DNA evidence in this case was not reliable and should not have been admitted. The evidence so unprofessional handled it had to be deemed contaminated. Appellant presented expert testimony that the police handling of the bloody evidence in this case was a "classic" on how not to handle such evidence. Suppression of the DNA evidence was the proper remedy given the highly unusual facts of this case.

7

Ground Three:

> Whether a directed verdict in the absence of the contaminated DNA evidence should be issued, since there was not any substantial circumstantial evidence appellant committed the murder, since the other evidence only raised a suspicion of his guilt?

> Supporting Facts: Appellant should be granted an order of acquittal. Without the contaminated DNA evidence, there is not any substantial circumstantial evidence appellant kidnapped, robbed and murdered the victim.

Ground Four:

> Ineffective assistance of counsel.

> Supporting Facts: a.[3] Trial counsel provided the Applicant with ineffective assistance by failing to request a mistrial when it was revealed that one of his jurors was the son of a man the Applicant was involved in an automobile accident with and against whom he was actively seeking damages. b. Trial counsel was ineffective for failing to discuss with the Applicant the question of whether or not he wanted a juror removed from service when it was revealed that the individual was the son of a person with whom the Applicant had a car accident. c. Trial counsel was ineffective for neglecting, at minimum, to request that the alternate juror seated after a juror revealed that he was the son of someone with whom the Applicant, the Applicant's fianceé and his daughter had a car accident and against whom they were seeking damages. d. Applicant alleges that trial counsel was ineffective for failing to thoroughly investigate and review all physical evidence, especially the hair from victim's hand as well hair from sleeve of victim's shirt and the tire tracks and the casts thereof. e. Applicant believes trial counsel was ineffective for failing to interview all important potential witnesses, including the Liberty Hill Fire Department. Additional witnesses who should have been interviewed by defense counsel include: (1) A representative from the insurance company which insured the father of a juror against whom the Applicant had a pending lawsuit, or known legal claim, for a car accident. (2) Witness from Kershaw Family Court. (3) Record custodian for Kershaw Family Court. f. Trial counsel was ineffective for failing to adequately preserve his objection to the admission of the sweater introduced against the Applicant at trial. g. Trial counsel was ineffective for failing to adequately preserve his objection to the admission of tire

---

[3]Petitioner designated his supporting facts for Ground Four with numerals. [Entry #1-2 at 8  9]. For clarity, the court ascribes letter designations to each supporting fact, as did Respondent in his motion for summary judgment.

tread impressions introduced against the Applicant at trial.

Ground Five:

Ineffective assistance of appellate counsel.

Supporting Facts: 1. Applicant believes appellate counsel was ineffective for failing to argue that the judge erred by denying the defense motion to suppress the use of a sweater introduced against the Applicant at trial. 2. Applicant believes appellate counsel was ineffective for failing to argue that the judge erred by denying the motion to suppress the use of tire tread impressions introduced against the Applicant at trial. 3. Applicant believes appellate counsel was ineffective for failing to argue against the use of DNA evidence in his case under the criterion set forth in *State v. Council*, 515 S.E.2d 508 (S.C. 1999). 4. Applicant believes appellate counsel was ineffective for failing to challenge the erroneous introduction of the tire tread evidence where the circumstances under which they were made rendered this evidence inherently unreliable due to the time and manner in which this evidence was collected. 5. Applicant believe appellate counsel was ineffective for failing to raise ex post facto violations which occurred when the trial judge refused to give jury instructions based upon the law in effect at the time of the crimes for which the Applicant was on trial.

*See* Petition at 5  10 [Entry #1-2], Resp.'s Return and Mem. at 6  9 [Entry #18].

B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322  23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

      C.      Habeas Corpus Standard of Review

           1.      Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus

relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

>    2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and

provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court, shall not be granted unless it appears
that

(A)    the applicant has exhausted the remedies available in the courts
of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to
protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits,
notwithstanding the failure of the applicant to exhaust the remedies available
in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or
be estopped from reliance upon the requirement unless the State, through
counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in
the courts of the State, within the meaning of this section, if he has the right
under the law of the State to raise, by any available procedure, the question
presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must

exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion

requirement, a habeas petitioner must present his claims to the state's highest court."

*Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider

only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[4] Furthermore, strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160, 162  65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters such as this one, in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

   b.  Procedural Bypass

   Procedural bypass, sometimes referred to as procedural bar or procedural default,[5] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

   The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme

---

[5]If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

14

Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10  11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (*quoting Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (*citing Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297  98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

15

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495  96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice.  *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4.    Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.*

16

D.    Analysis

1.    Procedurally-Barred Grounds

As an initial matter, Respondent contends that Petitioner's Grounds Four (e), Five, and a portion of Ground Four (d) are procedurally-barred to the extent they were not raised in state court. The undersigned agrees. Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165  66 (1996). It is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).

In Ground Four (d) (Failing to Investigate and Review All Evidence), Petitioner makes a general allegation that his trial counsel was ineffective in failing to thoroughly investigate all physical evidence. Specifically, he focuses on counsel's alleged failure to investigate "the hair from victim's hand as well as hair from sleeve of victim's shirt and the tire tracks and the casts thereof." [Entry #1-2 at 8]. Petitioner raised this issue to the PCR court, which denied Petitioner's challenge to his counsel's effectiveness for failure to investigate. App. at 1103. In seeking certiorari from the denial of his PCR application, Petitioner raised the issue of whether defense counsel was ineffective for failing to object to the admissibility of the tire casts. [Entry #18-1 at 3, 16  20]. Arguably, Petitioner fully exhausted his claim regarding the tire tracks, and the court will consider that claim on its merits below. However, Petitioner raised no issue at the appellate level regarding the hair from the victim's hand or shirt. Because Petitioner abandoned those issues in his PCR appeal,

17

no state remedies remain available, and he may not pursue them now in this habeas petition. *See Matthews v. Evatt*, 105 F.3d at 911.

Similarly, Grounds Four (e) (Witness Interviews) and Five (Ineffective Assistance of Appellate Counsel) were available and were presented at the PCR proceeding. *See* App. at 1032, ¶¶ 5  9; 1035, ¶5B. The PCR court denied relief on these grounds. App. at 1103  04. However, Petitioner abandoned a challenge to each one of these claims by not including them in his direct appeal and not raising them on appeal from the denial of his PCR application. Therefore, to the extent that these issues were not raised in his PCR appeal, they were not fairly presented to the South Carolina appellate courts and are procedurally-barred from federal habeas review.  *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

Additionally, Petitioner has not shown sufficient cause and prejudice to excuse the default. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, these issues are procedurally barred from consideration by this court and should be dismissed. *Id.*; *see* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a

18

defaulted claim into federal court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (noting that to satisfy the prejudice prong of *Strickland*, a petitioner must demonstrate there is a reasonable probability that, but for counsel's errors, the result would have been different); *Wainwright v. Sykes*, 433 U.S. at 88  91; *Murray v. Carrier*, 477 U.S. 478 (1986).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the State's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on his grounds. Petitioner had a trial in which he raised no objection, had the opportunity to file a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise these issues.  However, he failed to raise them, raise them properly, or preserve these issues for habeas review. Petitioner cannot establish cause and prejudice because he has consistently abandoned opportunities to preserve these specific issues.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.*  The court's review of the record does not support a showing of actual innocence.

The evidence showed that the victim knew Petitioner, and probably would have let

19

him into the Flamingo at night. Several witnesses identified Petitioner as having worn a striped sweater similar to the one found near the scene where the victim was found that was soaked with the victim's blood. Within approximately six hours of the victim's death, the police searched Petitioner's trailer and took into evidence Petitioner's boot that appeared to have blood on the top.  A PCR analysis on the blood sample taken from the boot revealed that the chances that the DNA on the boot did not come from the victim was one in 4,601.

In light of all of the foregoing, Petitioner cannot show actual innocence. Because Petitioner cannot establish actual innocence, the procedural bars apply to Ground Four (e), Ground Five, and the portions of Ground Four (d) related to the victim's hair.  Therefore, it is recommended that Respondent's motion for summary judgment be granted as to these grounds.

 2.    Merits Review

 a.    Ground One

In Ground One, Petitioner alleges that the trial judge erred in refusing to grant a defense request for an in-camera identification hearing concerning how witnesses identified him. [Entry #1-2 at 10]. Specifically, Petitioner argues the trial judge erred by refusing to hold an in camera hearing to challenge the suggestiveness of the photographic lineup identification made by Deputies Boone and Dowey. [Entry #31 at 13  15].

Petitioner raised this issue in his direct appeal as the first issue in the Final Brief of Appellant. App. at  939, 941  48. In affirming Petitioner's conviction on direct appeal, the South Carolina Supreme Court found that *State v. Williams*, 189 S.E.2d 299 (S.C. 1972), on

20

which Petitioner relied, was inapposite because it involved a situation in which an in-court identification of a defendant was tainted by an unlawful lineup. *State v. Ramsey*, 550 S.E.2d at 297. The court noted that Petitioner's trial counsel had not objected to the manner in which the photographs in the lineup were presented to the officers. Rather, the issue Petitioner raised on appeal was that, after the police discovered the sweater and identified him as a suspect, the investigators asked Deputies Boone and Dowey whether they had seen anyone in the lineup wearing that sweater. Deputy Boone identified Petitioner. Deputy Dowey recognized the sweater, but could not remember who he saw wearing it. Only after he saw the lineup did Deputy Dowey remember having seen Petitioner wear the sweater. Petitioner argues that the two officers would naturally "pick the big suspect in the big case for the Sheriff's Department at that time." *Id.* The South Carolina Supreme Court found that "even if the photographic lineup was impermissibly suggestive, any error in the trial court's refusal to conduct an in camera hearing was harmless." *Id.* at 298. Specifically, the court noted that "even without the deputies' testimony, the State had the testimony of three witnesses who testified they had 'no doubt' Ramsey was wearing a striped sweater on the day of the murder. Ramsey did not challenge this testimony, which is actually more probative than the deputies' testimony. Therefore, even if the admission of the deputies' testimony was erroneous, it was harmless error." *Id.*

In opposing Respondent's Return and motion, Petitioner again argues that *State v. Williams* entitled him to an in camera hearing regarding the identification. [Entry #31 at 13  15].  He claims the evidence regarding the line-up was conflicting because he denied

having been at the courthouse where the officers said they saw him wearing the sweater. *Id.* at 13  14. Petitioner then appears to argue that, without the officers' identification of him in the sweater, there would be nothing tying him to the sweater and the state would not have a case against him. *Id.*

The undersigned finds Petitioner's argument to be without merit. The state appellate court did not unreasonably apply the precedent of the United States Supreme Court in denying relief. As the state supreme court explained, Petitioner's argument that he was entitled to an in camera hearing pursuant to *State v. Williams*, 189 S.E.2d 299 (S.C. 1972), is misplaced. In Petitioner's case, there is no issue of an impermissibly suggestive lineup, as his own trial counsel expressly stated, "We are not objecting to the manner in which the photos were presented to the officers." App. at 160. The argument Petitioner preserved is whether the photographic lineup should have been shown to Deputies Boone and Dowey at all. App. at 160  61. The South Carolina Supreme Court concluded that any alleged error in the trial court's refusal to conduct an in camera hearing was harmless because even without the testimony of Deputies Boone and Dowey, the state had three witnesses (Crolley, Truman Payne, and Melissa Payne) who testified they had seen Petitioner wearing the sweater the evening before the victim's murder. That court's holding was not unreasonable.

The undersigned recommends Respondent's motion for summary judgment as to Petitioner's first Ground be granted.

> b.     Ground Two: DNA Evidence

In his second Ground, Petitioner alleges the trial judge erred by refusing to suppress

the allegedly unreliable DNA evidence analysis because the blood from which DNA evidence was obtained was allegedly contaminated. [Entry #1-2 at 1]. Petitioner raised this issue on direct appeal as issue two and argument two in the Final Brief of Appellant. App. at 949  59. The state's highest court considered the merits of this issue, finding as follows:

II. DNA Evidence

Ramsey argues the trial judge erred by admitting the "contaminated" DNA evidence from his boot. Ramsey also contends the DNA evidence was unreliable pursuant to Rule 702, SCRE. We disagree. This issue contains the following two distinct subparts: (1) whether the evidence was tainted and totally unreliable pursuant to *State v. Ford*, 301 S.C. 485, 392 S.E.2d 781 (1990); and (2) whether Mr. Deguglielmo's expert testimony was based on unreliable scientific evidence which should be excluded pursuant to Rule 702, SCRE.

A. Tainted Evidence

According to Ramsey, the police investigators mishandled all of the evidence in this case and committed "classic violations of evidence preservation." Specifically, pieces of evidence were taken from one crime scene to another. For example, the blood evidence was taken from the murder scene, to the Flamingo, and finally to Ramsey's home. The police investigators also took the striped sweater from the murder scene to the Flamingo where they removed hairs. Finally, the bloody footprintcasts were taken from the murder scene to Ramsey's home where they were washed.

According to Ramsey's expert witness, Donald Girndt ("Girndt"), a former SLED agent and crime scene investigator, the blood on the boot could have been contaminated because the victim's blood from the casts may have splashed onto the boot while they were being washed. Girndt maintained the evidentiary value of the blood on the boot under these circumstances was virtually zero. DNA evidence may be admitted in judicial proceedings in this State in the same manner as other scientific evidence, such as fingerprint analysis and blood tests. Ford, *supra*. However, the admissibility of DNA evidence remains subject to traditional attack, such as attacks based on relevancy or prejudice. *Id.* According to this Court in *Ford*, " traditional challenges to the admissibility of [DNA] evidence such as the contamination

23

of the sample or chain of custody questions may be presented. These issues relate to the weight of the evidence. The evidence may be found to be so tainted that it is totally unreliable and, therefore, must be excluded." *Id.* at 490, 392 S.E.2d at 784.

We find the DNA evidence in this case is not so tainted that it is totally unreliable. Two conflicting theories were offered at trial as to how the evidence was collected and its potential for contamination. Ramsey maintains the blood on the boot could be contaminated, while the police officers testified they were careful and complied with procedures. We find these issues relate to the weight of the evidence.

B. Admissibility Pursuant to Rule 702, SCRE

The proper standard for the admissibility of scientific evidence is outlined in Rule 702, SCRE. Pursuant to Rule 702, SCRE, in order for the evidence to be admissible, the trial judge must find the scientific evidence will assist the trier of fact, the expert witness is qualified, and the underlying science is reliable.FN3 The trial judge should determine the reliability of the underlying science by using the following factors: (1) the publication of peer review of the technique; (2) prior application of the method to the type of evidence involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures. *State v. Council*, 335 S.C. 1, 515 S.E.2d 508 (1999). Further, even if the evidence is admissible under Rule 702, SCRE, the trial judge must determine if its probative value is outweighed by its prejudicial effect under Rule 403, SCRE. Once the evidence is admitted under these standards, the jury may give it such weight as it deems appropriate. *Id.* FN3. Rule 702, SCRE, states: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Ramsey does not challenge the evidence based on any of the *Council* factors. Most importantly, he does not challenge the qualifications of the State's expert, Deguglielmo, or the reliability of the PCR procedure. He challenges only the means in which the police officers handled the evidence prior to the testing conducted by Deguglielmo.

The issue is whether Deguglielmo's expert testimony regarding the DNA evidence was unreliable pursuant to Rule 702, SCRE and, therefore,

inadmissible. This Court reviews the admission of such testimony under an abuse of discretion standard. *Payton v. Kearse*, 329 S.C. 51, 495 S.E.2d 205 (1998). The trial judge did not abuse his discretion by admitting Deguglielmo's expert testimony. First, Ramsey does not challenge the PCR procedure used by Deguglielmo to test the DNA samples. Even if the samples were mixed during collection, Ramsey does not demonstrate Deguglielmo's testing procedure was unreliable, much less so unreliable as to warrant exclusion. Second, the testimony concerning the DNA evidence complied with the requirements as set forth in Council. Any evidence concerning contamination, therefore, went to the weight of the testimony, not its admissibility. Finally, the mixture of DNA evidence is not a basis for the exclusion of PCR evidence. *See Oregon v. Lyons*, 124 Or. App. 598, 863 P.2d 1303 (1993) (finding the potential for DNA contamination presents an "open field" for cross examination at trial, but does not indicate the PCR method of DNA testing is inappropriate for forensic use). According to Deguglielmo, mixed samples are simply a fact of life in forensic science.

*State v. Ramsey*, 550 S.E.2d at 298  99.

Respondent argues Petitioner has not raised a claim for federal habeas corpus relief because such relief is inappropriate when considering whether the South Carolina state courts erroneously applied South Carolina's evidence law in determining the admissibility of the evidence and expert testimony. Rather, Respondent argues the habeas court's review is limited to deciding whether evidence admitted pursuant to the state court's ruling on state law resulted in fundamental unfairness. [Entry #18 at 29  30]. Respondent also considers the substantive merits of whether the DNA evidence should have been excluded pursuant to *State v. Ford*, 392 S.E.2d 781 (S.C. 1990), and whether expert testimony regarding the DNA was properly admitted pursuant to Rule 702, SCRE, and *State v. Council*, 515 S.E.2d 508 (1999). [Entry #18 at 30  36]. Petitioner responds by arguing that his challenge does not concern whether Mr. Deguglielmo's testimony regarding the DNA evidence should have

25

been excluded, but whether the blood evidence *when collected*, should have been excluded as unreliable. [Entry #31 at 3 6].

The undersigned agrees with Respondent. On habeas review, the court will not typically look behind the ruling of the South Carolina Supreme Court on issues regarding the admissibility of the DNA evidence pursuant to South Carolina law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67 68 (1991); *see also Wainwright v. Sykes*, 433 U.S. 72, 81 (1977) (noting the "well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts.").

As explained by the Fourth Circuit, matters regarding admissibility or sufficiency of evidence and jury instructions in state trials are matters of state procedural and substantive law that do not involve federal constitutional issues. *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960). Only when "circumstances impugning fundamental fairness or infringing specific constitutional protections" exist, is a federal question presented in a federal habeas petition. *Id.*

Here, the state's highest court reviewed arguments regarding the admissibility of the DNA evidence on two separate state grounds. *See State v. Ramsey*, 550 S.E.2d at 298 99 (excerpted above). The South Carolina Supreme Court first considered Petitioner's "traditional challenge" that the evidence was tainted because the sample was contaminated.

26

*Id.* at 298. The court evaluated Petitioner's challenge to the collection of the DNA evidence pursuant to *State v. Ford*, which provides as follows:

> The admissibility of [DNA] evidence remains subject to attack. Issues pertaining to relevancy or prejudice may be raised. For example, expert testimony may be presented to impeach particular procedures used in a specific test or the reliability of the results obtained. In addition, traditional challenges to the admissibility of evidence such as the contamination of the sample or chain of custody questions may be presented. These issues relate to the weight of the evidence. The evidence may be found to be so tainted that it is totally unreliable and, therefore, must be excluded.

392 S.E.2d at 784 (citations omitted).

The court evaluated Petitioner's challenge regarding the collection of the DNA evidence and found that evidence was "not so tainted that it [was] totally unreliable." 550 S.E.2d at 298. Rather, the court found that the two conflicting theories regarding the collection of the DNA evidence presented at trial    Petitioner's claim that the blood on the boot was contaminated, and the police officer's testimony that they were careful and followed procedure when collecting the evidence    were considerations for the jury regarding the weight of such evidence, not considerations for the court concerning its admissibility. *Id.*

The undersigned is of the opinion that Petitioner's challenge that the blood used for DNA sampling was tainted should be dismissed. The South Carolina Supreme Court determined the blood sample was not so tainted and totally unreliable to be excluded based on *State v. Ford* and found that challenge to the DNA evidence without merit. The state court's opinion on this issue of state law is founded on its consideration of state evidentiary law and does not implicate issues of constitutional proportion. This portion of Petitioner's

27

Ground Two challenge should be dismissed.

Respondent analyzes Petitioner's Ground Two as a challenge that the DNA was unreliable based on Rule 702, SCRE, and that the trial court erred by permitting the state's expert witness, Mr. Deguglielmo, to testify regarding the DNA-testing results, noting the admission of such expert testimony is reviewed for abuse of discretion. *See Payton v. Kearse*, 495 S.E.2d205, 210 (S.C. 1998). Petitioner makes it clear in his response to Respondent's Return and Motion for Summary Judgment that he is *not* challenging Mr. Deguglielmo's testimony at all. Entry # 31 at 4 ("Apparently, this court believes that Petitioner is attacking Mr. Deguglielmo's testimony, when in fact Petitioner is attacking the reliability of the evidence before it was placed in Mr. Deguglielmo's hands."). Instead, Petitioner indicates he is challenging the admissibility of the blood-on-the-boot evidence at all. *Id.* at 5 6. He claims that the jury should not be permitted to decide his guilt based on that evidence because the state did not demonstrate the victim's blood was on the boot prior to law enforcement officers' bringing it to Petitioner's residence. *Id.*

As discussed above, this claim was addressed by the South Carolina Supreme Court on direct appeal, and the court does not consider it further. To the extent Petitioner's allegation of error is construed as one challenging the reliability of Mr. Deguglielmo's testimony regarding the DNA and the blood on the boot, the undersigned agrees with Respondent that such challenge should be dismissed. In its opinion dismissing Petitioner's direct appeal, the South Carolina Supreme Court considered the admissibility of Mr. Deguglielmo's testimony under Rule 702, SCRE and the factors of *State v. Council*, 515

28

S.E.2d 508 (S.C. 1999). The state's highest court found that the trial judge did not abuse his discretion in admitting the expert testimony and that any questions regarding pre-testing contamination of the blood evidence went to the weight the jury gave such evidence, not its admissibility. *State v. Ramsey*, 550 S.E.2d at 298.

Finally, to the extent Petitioner is arguing that SLED Agent McClure's expert testimony regarding the DNA testing of blood on the sweater was unreliable, that argument fails, as well. Petitioner offered no evidence that the blood on the sweater was contaminated, and Agent McClure concluded that the blood matched the victim's. App. at 527. The court agrees with Respondent that Petitioner has not demonstrated Agent McClure's opinion was not relevant, controverted, or inadmissible.

Petitioner has not demonstrated entitlement to habeas corpus relief on Ground Two, and the undersigned recommends Respondent's motion for summary judgment be granted as to Ground Two.

c.     Ground Three

In Ground Three, Petitioner alleges that the trial judge should have granted a directed verdict of acquittal based upon his reassertion of his claim that the DNA evidence was improperly admitted into evidence. [Entry #1-2 at 7]. Petitioner raised this issue as issue three, argument three in his direct appeal. App. at 960  96.

On direct appeal, the South Carolina Supreme Court denied Petitioner's claim that the trial court should have directed a verdict of acquittal because the claim was based on the DNA argument the court had already rejected:

29

III. Directed Verdict

Ramsey argues the trial judge should have directed a verdict of acquittal because the DNA evidence should have been excluded.FN4 Because we find the DNA evidence was admissible, it is unnecessary for us to address Ramsey's directed verdict motion.

> FN4. A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. Brown*, 103 S.C. 437, 88 S.E. 21(1916). If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury. *State v. Pinckney*, 339 S.C. 346, 529 S.E.2d 526 (2000).

*State v. Ramsey*, 550 S.E.2d at 299.

In his response to Respondent's Return and Motion for Summary Judgment, Petitioner seems to alter his third ground, claiming the trial court erred in refusing to direct a verdict of acquittal because "even if the DNA evidence were admissible, the evidence introduced was insufficient as a matter of law and, therefore, directed verdict of acquittal should have been granted[.]" [Entry #31 at 6]. To the extent this could be construed as bringing additional arguments not raised before, the court need not consider them on habeas review. *Matthews v. Evatt*, 105 F.3d at 911. The gist of his argument in Ground Three, though, continues to focus on the sufficiency of the evidence and his argument that the evidence against him was circumstantial. [Entry #31 at 6  12].  He discusses the boot, the sweater, and the tire track. *Id.*

Petitioner's challenge to the trial court's failure to direct a verdict of acquittal goes to the sufficiency of the evidence. Such a claim may be considered by courts on collateral review, but the federal court's review of such a claim is "sharply limited." *Wilson v. Greene*,

155 F.3d 396, 405 (4th Cir. 1998). "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Id.* at 405 06 (internal citations omitted). Furthermore, a federal court reviewing such a habeas claim must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Additionally, the court must presume that the jury resolved conflicts in the state's favor. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). Completely circumstantial evidence may support a conviction. *Stamper v. Munice*, 944 F.2d 170, 174 (4th Cir. 1991). Based on this standard of review, Petitioner may only receive habeas relief if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Wilson*, 155 F.3d at 406 (internal citations omitted).

The South Carolina Supreme Court did not consider Petitioner's direct appeal that he should have been granted a directed verdict of acquittal based on the claimed inadmissibility of the DNA evidence, because it found the DNA evidence was properly admitted. 550 S.E.2d at 299. Nevertheless, based upon the undersigned's consideration of the evidence presented and admitted, there was sufficient evidence before the trial court   with and without the DNA evidence   from which Petitioner's guilt could have been fairly and logically deduced. This evidence includes the bloodstained discarded sweater that had the victim's hair on it (App. at 737) and that several witnesses connected to Petitioner (App. at 536   38, 553, 562   63, 610, 613, 625   26); the tire track at the site the victim's body was discovered, which was similar

31

to the tire on Petitioner's car (App. at 348  50); the testimony that Petitioner had been seen in that same car (a blue station wagon) hours before the murder with Joey "Clown" Conners (App. at 535); the fact that the interior of Petitioner's car had been freshly washed hours after the murder (App. at 276, 344  45); the fact that Petitioner's clothes were in the washing machine when deputies arrived at his home several hours after the murder (App. at 239, 274  75); Petitioner's propensity for carrying a fishing knife (App. at 390); the lack of signs of forcible entry at the Flamingo (App. at 224); the testimony that the victim would have let Petitioner in the Flamingo during the night (App. at 225); and Petitioner's statement to police after his arrest that he expected officials to arrest Joey Conners, as well, because he had been with Plaintiff on the night of the murder (App. at 307, 363).

The court has considered Petitioner's response in which he providing portions of his own testimony to contradict these pieces of evidence. [Entry #31 at 7  12]. However, this evidence amplifies the presence of factual issues and shows the jury was to consider and weigh all evidence in reaching its verdict. The undersigned finds the trial court properly refused to direct a verdict. Petitioner has not satisfied his burden of proof under 28 U.S.C. § 2254 and *Jackson v. Virginia*, 407 U.S. at 619. Respondent's motion for summary judgment should be granted as to Ground Three.

d.    Ground Four: Ineffective Assistance of Trial Counsel

In Ground Four, Petitioner alleges various allegations of ineffective assistance of counsel, as follows: (a  c) (Juror Complaints); (d) failure to investigate; (e) failure to interview witnesses; (f  g) failure to adequately preserve objection to admission of physical

evidence (sweater and tire impressions).

> i.    Specification a, b, c   Juror Claim

Near the conclusion of the trial, the foreman of the jury indicated to the court that another juror's father had been in an accident with Petitioner. App. at 820. Petitioner contends that trial counsel performed deficiently in: (a) failing to move for a mistrial; (b) failing to discuss with Petitioner the possibility of replacing a juror with an alternate; and/or (c) failing to request that a juror be replaced with an alternate. These issues were raised before the PCR hearing judge and denied within the PCR order. App. at 1102  03. The claims were blended in issue three in the certiorari petition. *See* Entry #18-1 at 12  14.

When informing the court about the juror (identified as "Juror #87"), the foreman stated that the juror had not been involved with Petitioner in the accident that was discussed at trial. App. at 820. When initially asked about prejudice, counsel Wells stated that wrecks turn into lawsuits sometimes and that he did not know what happened in this case and " I wouldn't want for Joey or Chris to have sued this man's father or claimed against him." App. at 821.

In response, the trial judge made inquiry of Juror #87 concerning potential bias against the Petitioner.

> THE COURT: Now the foreman has indicated that you expressed some statement to him about - what was it you said to the foreman?
> Juror 87: When I heard about the accident that Mr. Ramsey and Ms. Beard and all of them was involved in, I remembered that my father was in that accident too. I think they ended up running into each other, or something like that.
> THE COURT: Is that all you know? Has anybody sued as a result of it?
> Juror 87: I think they will have a hearing on it pretty soon.

THE COURT: Does that prejudice you in any way?

Juror 87: No sir, but I wouldn't want it come up later on saying that I

THE COURT: No sir, but that is the sign of a good juror, and I understand that, but the fact that your father was in this automobile wreck in and of itself is no reason to prejudice you with regards to being fair to the State and the defendant in this case, is it?

Juror 87: No, sir.

THE COURT: Can you still tell me that whatever your verdict is it will be based on the law and the evidence in this courtroom?

Juror 87: Yes, sir.

THE COURT: And that has nothing    that wreck if it happened has absolute nothing to do with the issues in this case?

Juror 87: No sir.

App. at 822  23. The trial court then qualified the juror to serve.

THE COURT: I concluded that he is absolutely qualified to serve. He just in abundance of caution wanted to call that to our attention and trying to be a good juror and he is. Do you have anything for the record?

COUNSEL WELLS: No sir.

THE COURT: All right that its all.

App. at 824.

During the PCR hearing, defense counsel Wells testified that he made a conscious decision not to move for a mistrial based upon Juror #87's statements. App. at 1048. He stated that he had considered it, but that he was one of the jurors that he needed in order to get an acquittal.  Trial counsel based this strategy on seeking to have some diversity on the mostly-white jury. Counsel stated that he thought that was his best chance to try to get the case won because he had already used some surprises with the defense and that this would be given away if there were a mistrial. App. at 1049. Defense counsel noted the juror's disclosure concerned an accident that was within six months of the murder and that he should have discussed it with Petitioner.  App. at 1049  50. Counsel testified that he had talked with

the Petitioner and his girlfriend and learned that they had had a wreck. He could not recall

if he had discussed with Petitioner the possibility of requesting that an alternate be seated,

although he knows that he did consider it. App. at 1051 52.

> In denying relief, the PCR court found the following:

> As to the allegations 1,2,3 regarding the juror whose father was involved in an accident with the Applicant, Counsel was not ineffective in failing to seek a mistrial, to discuss that matter with the Applicant, or to have the alternate juror seated. Counsel articulated a valid trial strategy for his decision to not seek a mistrial in that he felt it would be more prejudicial to his client to have to go through a second trial after the defense had been revealed than to maintain the juror. Counsel also testified that the juror in question was a desirable juror and he wished to not excuse him for that reason. This Court further finds that the trial judge conducted an in camera hearing to determine whether the juror was fit to continue to serve. After a lengthy discussion, the trial judge determined that the juror could maintain his impartiality. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. *Whitehead v. State*, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also Dempsey v. State*, 363 S.C. 365, 610 S.E.2d 812 (2005) and *McLaughlin v. State*, 352 S.C. 476, 575 S.E.2d 841 (2003). Further, Applicant presented no evidence that had Counsel discussed this issue with him, he would have chosen to move for a mistrial. In light of the trial judge's in camera hearing, this Court is not inclined to believe that a mistrial would have been granted. Accordingly, this allegation is denied and dismissed.

App. at 1102 03.

> Respondent submits that this was a reasonable application of the Sixth Amendment

and *Strickland*. The trial court found, in its discretion, that Juror #87 "was absolutely

qualified to serve." App. at 824. Juror #87 explained that during the course of the trial there

was reference to an accident and that Juror #87 thought his father may have also been part

of the accident. "I think they ended up running into each other, or something like that." App.

35

at 822. Counsel noted that, from talking with Petitioner and his girlfriend, the accident was a fairly minor one. App. at 1060. There is no evidence that Juror #87 was himself involved in anything with Petitioner or any witnesses. App. at 823. When questioned, Juror #87 indicated he would not be unfair to the state or Petitioner, that his verdict would only be based on the law and evidence, and that "that wreck if it happened has nothing to do with the issues in this case." App. at 823.

The court agrees with Respondent. Because there is no evidence of prejudice or partiality, there is no basis indicating an alternate juror would have had to be seated in place of Juror #87. Additionally, Petitioner does not demonstrate any prejudice from a potential Sixth Amendment violation because there is no evidence that indicates the trial court would have entertained any request to replace Juror #87 with the alternate when there was no misconduct or bias alleged against an otherwise qualified juror. Petitioner's argument is basically a disagreement with the trial court's decision that Juror #87 was not biased or prejudiced against him. A decision on whether to dismiss a juror and replace him with an alternate, however, lies within the sound discretion of the trial court. *State v. Stone*, 290 S.E.2d 380, 382 (S.C. 1986). The undersigned finds that Petitioner has not satisfied his burden of proof on this issue. The undersigned recommends Petitioner's allegations that counsel was ineffective based on considerations surrounding Juror #87 be dismissed as without merit for habeas relief and that Respondent's motion for summary judgment be granted as to Ground Four (a), (b), and (c).

> ii.    Specification (d)    Failure to Investigate and Review
>        Physical Evidence

Petitioner's next allegation concerning his trial counsel's ineffectiveness is a general

claim that counsel did not thoroughly investigate and review all physical evidence.[Entry #1-

2 at 8]. Petitioner focuses this Ground on trial counsel's failure to review "especially the hair

from victim's hand as well as hair from sleeve of victim's shirt and the tire tracks and the

casts thereof." *Id.* Petitioner raised this issue to the PCR court, which denied Petitioner's

challenge to his counsel's effectiveness for failure to investigate. App. at 1103.

As discussed above, the undersigned agrees with Respondent that Petitioner may not

pursue his claims regarding the hair from victim's hand or shirt because he did not pursue

any issue at the appellate level regarding the hair from the victim's hand or shirt. Because

Petitioner abandoned those issues in his PCR appeal, no state remedies remain available, and

he may not pursue them now in this habeas petition. *See Matthews v. Evatt*, 105 F.3d at 911.

Because Petitioner arguably exhausted his argument regarding the tire tracks, the

undersigned considers it on its merits. In ruling on Petitioner's PCR application, the court

found the following regarding counsel's handling of the tire-track issue:

> As to the allegation 4, that Trial Counsel was ineffective for failing to
> thoroughly investigate and review all physical evidence especially the tire
> tracks and the casts thereof, this Court finds this claim is without merit. It is
> clear from the record and the testimony presented at the evidentiary hearing
> that Counsel was fully aware of all evidence presented at trial. Counsel had a
> deep appreciation for the seriousness of the charges and prepared a strong
> defense on Applicant's behalf. Counsel was able to challenge and point out
> inconsistencies within the prosecution's case including the Applicant's boot
> not matching the impressions of the boots at the scene, contaminated DNA,
> mismatched tire tracks, and lack of physical evidence on the state's primary

37

piece of evidence, the sweater.

App. at 1103.

The undersigned is of the opinion that the PCR court reasonably applied *Strickland* in making this finding. Trial counsel did not object to the admission of the tire track evidence. App. at 1055. As the PCR court noted, even if trial counsel had objected to the tire-track evidence, it does not necessarily follow that the trial judge would have suppressed that evidence or that appellate courts would have found admission of the evidence constituted reversible error. App. at 1105. Further, at the PCR hearing, trial counsel explained that the tire track was found in the dirt at an intersection that was in Petitioner's neighborhood. Accordingly, counsel noted that the tire tracks were not "damning evidence." App. at 1075 76.

The tire tracks were relevant. The South Carolina Supreme Court referenced the tire tracks as indicating the car was moving from the body scene toward the place the sweater was discovered. *State v. Ramsey*, 550 S.E.2d at 297. Evidence adduced at trial indicated investigators took casts of the tire tracks because the impressions looked similar to the tires on Petitioner's blue station wagon. App. at 348 49, 355. Petitioner was seen in his blue station wagon on the night of the murder, and investigators noted the station wagon had been washed and still had water inside of it when they questioned Petitioner the morning after the murder. App. at 276, 344 45, 535.

Relevant evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice. Rule 403, SCRE. Determinations regarding whether relevant

38

evidence should be withheld pursuant to Rule 403 are left to the trial court's discretion. *See State v. Torres*, 703 S.E.2d 226, 228 (S.C. 2010). Even if trial counsel had made further objections, the trial court would have been acting within the bounds of his discretion to find the probative value of the tire-track evidence outweighed potential prejudice. Petitioner cannot show a Sixth Amendment violation pursuant to *Strickland*. Respondent's motion for summary judgment as to this portion of Ground Four (d) should be granted.

> iii.     Grounds Four (f) and (g): Failure to Preserve Objections to Physical Evidence Sweater and Tire Tread Impressions

Petitioner also claims his trial counsel was ineffective by failing to adequately preserve his objection to the admission of the sweater [Ground Four (f)] and the tire tread impressions [Ground Four (g)]. [Entry #1-2 at 9]. Respondent did not discuss these grounds in any detail in his Return/Motion for Summary Judgment. The court notes that Petitioner raised these issues in his PCR proceedings, and will consider these grounds on their merits.

At trial, Petitioner's defense counsel made a motion outside of the jury's presence to have the sweater evidence excluded because the connection between the sweater and Petitioner was tenuous. App. at 159. The trial court denied that motion. App. at 161. The state introduced the sweater as evidence during the testimony of Investigator Brown, and counsel did not object to the admission of the sweater at that time. App. at 209.

The PCR court found Petitioner's claim that counsel was ineffective for failing to preserve objection to the sweater's admissibility was without merit, indicating as follows:

Applicant has shown no evidence that had trial counsel further objected to the

39

admission of the sweater that the trial judge would have suppressed the evidence. Further, even if the issue were properly preserved, there is no evidence that it would have been reversible error. Sufficient foundation was set forth in the testimony by officers that they had seen the Applicant in the sweater. The sweater was of a distinctive pattern and easily recognizable. There was no physical evidence to tie Applicant to the sweater; none of the Applicant's blood was on the sweater, none of the Applicant's hair was on the sweater, and no other DNA or trace evidence was on the sweater to connect it to the Applicant. Although Applicant was convicted, this lack of evidence was potentially beneficial to Applicant and counsel argued such to his advantage. Accordingly, this allegation is dismissed.

App. at 1105.

The undersigned agrees with Respondent that the PCR court appropriately applied *Strickland* in making its finding. This allegation of trial counsel's inadequacy is without merit on habeas review. *See Grundler*, 283 F.2d at 802 (noting admissibility of evidence matter of state law not to be considered in federal habeas proceeding unless raising issue that infringes specific constitutional protections). The PCR court considered this issue and found trial counsel was not ineffective for failing to renew his objection to the sweater and that, even if the sweater's admission was error, such error would have been harmless. App. at 1105. As discussed above, and as noted by the PCR court, the record contained sufficient evidence to connect Petitioner to the sweater. *See* App. at 536 38, 553, 562 63, 610, 613, 625 26, 1105. Further, trial counsel argued the lack of Petitioner's hair, blood, or other trace evidence on the sweater in Petitioner's defense. *See* App. at 1105. Further, the sweater was relevant, and the trial judge had discretion to admit it over counsel's objection. Rule 403, SCRE. The undersigned recommends this Ground Four (e) be dismissed.

Similarly, in Ground Four (f), Petitioner claims his counsel was ineffective for failing

to object to admission of the tire impressions. [Entry #1-2 at 9]. The PCR considered and dismissed this same allegation:

> Applicant has shown no evidence that had trial counsel further objected to the admission of the tire tread impressions that trial judge would have suppressed the evidence. Further, even if the issue were properly preserved, there is no evidence that the appellate courts would have found any reversible error. Sufficient foundation was set forth in the location of the tire track to the incident location and that the tire tread was the same make and model of Applicant's truck. Further, it is clear that Counsel was able to point out inconsistencies with the tire tread impressions - the size was not consistent with the size of tire on Applicant's vehicle. Further, during the trial, Counsel was able to show that one of the tire tread impressions taken at the scene was lost by law enforcement. A second tire tread impression was taken after the scene was no longer secured and after the officers had been to Applicant's house and had seen the vehicles on the premises. This inconsistency in the evidence was potentially beneficial to Applicant and Counsel argued such to his advantage. Accordingly, this allegation is denied and dismissed.

App. at 1105  06.

The undersigned finds the PCR court reasonable applied *Strickland* in making this finding. As set out more fully above in the discussion of Petitioner's claim regarding trial counsel's failure to investigate, the tire tracks were relevant. *See State v. Ramsey*, 550 S.E.2d at 297 (referencing tire tracks as indicating car moving from the body scene toward place sweater was discovered); App. at 348  49, 355 (testimony that impressions taken because tracks at scene looked similar to tread on tires of Petitioner's vehicle); App. at 276, 344  45, 535 (Petitioner was seen in his vehicle on night prior to victim's murder, and vehicle washed on morning after the murder). Pursuant to Rule 403, SCRE, such evidence could be excluded if its probative value was outweighed by unfair prejudice. The decision regarding whether to admit the evidence was left to the discretion of the trial court. Accordingly, even if trial

counsel had objected to the evidence, the trial court would have been acting within bounds of his discretion in admitting the evidence. Petitioner cannot demonstrate a Sixth Amendment violation, and Respondent's motion for summary judgment should be granted as to these portions of Ground Four, as well.

> iv.    Grounds Four (e) (Witness Interviews) and Five (Ineffective Assistance of Appellate Counsel)

Petitioner's remaining grounds concerning ineffective assistance of counsel Ground Four (e) (Trial Counsel's Failure to Conduct Certain Witness Interviews) and Ground Five (Ineffective Assistance of Appellate Counsel) were abandoned below and need not be considered here. Petitioner presented those grounds at the PCR proceeding. *See* App. at 1032, ¶¶ 5 9; 1035,¶5B. The PCR court denied relief on these grounds. App. at 1103 04. However, Petitioner abandoned a challenge to each one of these claims by not including them in his direct appeal and not raising them on appeal from the denial of his PCR application. Therefore, to the extent that these issues were not raised in his PCR appeal, they were not fairly presented to the South Carolina appellate courts and are procedurally-barred from federal habeas review. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review). As discussed above, Petitioner failed to exhaust available state-court remedies as to this issue and cannot show actual innocence. The court need not consider the merits of these portions of Petitioner's ineffective-assistance-of-counsel challenge.

E.    Petitioner's Motion to Stay/For DNA Testing

On January 21, 2011, Petitioner asked the court to stay this matter and to order additional DNA testing on forensic evidence, specifically, "the hair in question." [Entry #30]. Petitioner includes an August 10, 2010 letter from the chief judge of the Fifth Judicial Circuit Court of South Carolina in which the state informed Petitioner it did not have funding to conduct the DNA testing. [Entry #30-1]. Respondent did not respond to Petitioner's motion.

The undersigned recommends the motion be denied. Petitioner has not provided details of how further DNA testing would render new evidence that would assist him, other than to state that DNA testing of "the hair in question" would produce newly-discovered evidence and provide "justice to all in this case." [Entry #30 at 1]. Presumably, Petitioner hopes to obtain DNA testing results indicating the hair was not his and thereby argue that is new evidence that shows his actual innocence.

The undersigned is of the opinion that the additional DNA testing Petitioner seeks would not likely provide the additional evidence Petitioner would need to establish actual innocence in a habeas proceeding. *See Herrera v. Collins*, 506 U.S. 390, 400, 417  18 (1993) (noting habeas petitioner must show actual innocence and a constitutional violation to prevail based on presentation of newly discovered evidence); *see also Schlup v. Delo*, 513 U.S. at 327  28 (noting district court must make a "probabilistic determination" that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). As discussed above, the record contains physical evidence    including the victim's blood on the striped sweater that several witnesses had seen Petitioner wear and

43

the victim's blood on Petitioner's boot    that the jury considered in determining Petitioner was guilty. Further, the DNA evidence the jury considered included testimony that the sweater contained the hair of the victim and of Ms. Brenda Pardue, a person not connected with Petitioner. *See* Entry #30-1 at 4; App. at 735 (expert testifying that DNA testing indicated hairs from sweater matched victim and Ms. Pardue, but did not match Petitioner); *see also* App. at 880 (closing argument of Petitioner's counsel noting Ms. Pardue's hair on sweater and that Petitioner did not know Ms. Pardue). Petitioner's actual innocence claim would not be buttressed by additional evidence supporting his argument that a hair on the sweater belonged to another person such that the jury's verdict could be deemed unreasonable.

Additionally, the DNA testing Petitioner seeks does not bear on his claims before the court in this habeas petition, including his claims regarding Juror #87, other evidence, and his trial counsel's purported ineffective assistance. The undersigned finds it would be inappropriate to stay the ruling on these claims.

Accordingly, the undersigned recommends denial of Petitioner's motion to stay/for DNA testing.

IV.    Conclusion

For the foregoing reasons, the court recommends that Respondent's motion for summary judgment [Entry #19] be granted and Petitioner's motion to stay/for DNA testing [Entry #30] be denied.

IT IS SO RECOMMENDED.

August 17, 2011                                     Shiva V. Hodges
Florence, South Carolina                           United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**